UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ALBERT A. GRAYER**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 22-1501**

**JAMES SOILEAU**                                       **SECTION: "J"(1)**

### REPORT AND RECOMMENDATION

Plaintiff, Albert A. Grayer, a state inmate, filed this *pro se* and *in forma pauperis* federal civil action against his parole officer, James Soileau.[1] Bringing claims pursuant to 42 U.S.C. § 1983,[2] plaintiff alleged that his rights were violated when he was accused of violating the terms of his parole.

### I. Background

In support of his claims, plaintiff has made the following allegations:[3]

---

[1] Plaintiff also listed his wife as a plaintiff on the complaint. However, she did not sign the complaint, nor did she either pay the required filing fee or submit an application to proceed *in forma pauperis*. Therefore, she is not considered to be a plaintiff in this matter. See Rec. Doc. 3.

[2] In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

[3] This summary includes the allegations and information included in both plaintiff's complaint, Rec. Doc. 1, and his opposition to the defendant's motion to dismiss, Rec. Doc. 14. The United States Fifth Circuit Court of Appeals has held that when a district court is considering a motion to dismiss in a case filed by a *pro se* plaintiff, the court must consider the "complaint under the less stringent standards applicable to *pro se* litigants." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983). In such instances, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Id. Therefore, a *pro se* litigant's supplemental filings which embellish the original complaint's averments may appropriately be considered when ruling on a motion to dismiss. Id.

On February 12, 2022, plaintiff was arrested in Arizona on a domestic violence charge based on an incident involving his then-girlfriend, Theresa Marie Wilkerson. Thereafter, a parole hold was lodged against him, and he was extradited to Louisiana. On March 10, 2022, plaintiff was released on bond, and he notified Soileau, his parole officer, of that fact. During a meeting on March 14, 2022, Soileau informed plaintiff that he would not be returned to jail; however, plaintiff was also informed that the Parole Board had ordered that he pay the extradition fee of $3,915 (an amount which thereby increased his monthly supervision fee to $84 per month) and that he was to have no contact with Theresa. At that time, plaintiff produced a marriage license for Theresa and himself, but Soileau stated "that doesn't mean anything." The following day, plaintiff returned to the office to file a grievance, but he was told that he could not file a grievance concerning a Parole Board decision. A supervisor then instructed plaintiff that he and his wife could execute a notarized affidavit stating that they did not want a protective order.

On March 17, 2022, plaintiff and Theresa executed such an affidavit. The following day, plaintiff gave the affidavit to Soileau. However, Soileau replied: "This doesn't mean shit. You are not to have any contact with her & if I even think you are I'm putting you back in jail."

On March 23, 2022, Soileau instructed plaintiff to report to the office the following day. When plaintiff did so, he was arrested for violating his parole by (1) engaging in criminal activity (i.e. the Arizona domestic violence offense), (2) violating the protective order, (3) violating the conditions of his "good time" supervision by having contact with Theresa, and (4) being $630 behind on his supervision fees.

Plaintiff thereafter told Soileau that he wanted both a preliminary hearing on the alleged parole violations and appointed counsel, but Soileau "failed to allow plaintiff to initial the

2

designated area" to request counsel on the parole hearing notice. The preliminary hearing was then held on April 8, 2022, without plaintiff having counsel. On April 11, 2022, the hearing officer issued a recommendation finding probable cause for the alleged violations.

On May 23, 2022, plaintiff filed this lawsuit in which he claimed:

(1)    The increase in his supervision fees violated his right to due process and constituted cruel and unusual punishment.

(2)    Soileau's failure to provide the notarized affidavit to the parole board so that the terms of plaintiff's parole could be "revisited" violated his right to due process.

(3)    Placing plaintiff back in jail on the same charges for which he had been released on parole violated the prohibition against double jeopardy.

(4)    Soileau's failure to follow the proper procedures, which would have allowed plaintiff to request counsel for the hearing, violated his rights.[4]

On June 23, 2022, the Parole Board found plaintiff guilty of violating his parole by being in arrears on his supervision fees but not guilty on the other charges. The Parole Board voted not to revoke plaintiff's parole but to instead continue him on supervision.

---

[4] The complaint also listed the following claim: "The search of Plaintiff Theresa Grayer's residence without a warrant violated Plaintiff's rights & constituted an Illegal Search Under the 4th Amendment to the United States Constitution." Rec. Doc. 1, p. 8. However, as already explained, plaintiff's wife is not a plaintiff in this action, see *supra* note 1, and plaintiff lacks standing to assert a Fourth Amendment claim on her behalf. See, e.g., Alderman v. United States, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."); Barry v. Feshour, 905 F.3d 912, 914 (5th Cir. 2018) ("The Supreme Court has long held that a claimant alleging a Fourth Amendment violation must have a cognizable Fourth Amendment interest – a concept known as 'Fourth Amendment standing.' This is so because Fourth Amendment rights are personal rights which may not be vicariously asserted." (citation, quotation marks, and ellipsis omitted)).

## II.  Motion to Dismiss

Soileau has filed a motion to dismiss.  He argues that dismissal is appropriate under Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(6), and/or 28 U.S.C. § 1915.[5]  Plaintiff has opposed that motion.[6]

Pursuant to Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation marks omitted).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).  A court should consider a Rule 12(b)(1) jurisdictional attack before addressing alternative motions attacking the merits of a plaintiff's claims.  Id.

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted.  In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted).  However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. (citation, footnote, and quotation marks omitted).

---

[5] Rec. Doc. 10.
[6] Rec. Doc. 14.

4

The federal pauper statute, 28 U.S.C. § 1915, requires a district court to dismiss an *in forma pauperis* complaint if the court determines that the action is frivolous or fails to state a claim upon which relief may be granted. A claim is frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) "if it has no arguable basis in law or in fact." Davis v. Lumpkin, 35 F.4th 958, 962 (5th Cir. 2022) (quotation marks omitted). A dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim is governed by the same standard as ones under Rule 12(b)(6). Butler v. Porter, 999 F.3d 287, 292 (5th Cir. 2021).

### A. Official-Capacity Claims

In his motion, Soileau first argues that any claims asserted against him in his official capacity are barred by the Eleventh Amendment. He is correct.

"Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." Green v. Mansour, 474 U.S. 64, 68 (1985). The State of Louisiana has not so consented. Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 281 (5th Cir. 2002) ("By statute, Louisiana has refused any ... waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See LA.REV.STAT. ANN. § 13:5106(A)."). And Congress has not abrogated Eleventh Amendment immunity for cases brought pursuant to 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe … that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). Therefore, Eleventh Amendment immunity is applicable to § 1983 claims against the State of Louisiana – and by extension, to official-capacity claims against a Louisiana state officer, such as Soileau. See K.P.

5

v. LeBlanc, 627 F.3d 115, 124 (5th Cir. 2010) ("The Eleventh Amendment bars suits by private citizens against a state in federal court. The bar applies not only to the state itself, but also protects state actors in their official capacities." (citations omitted)); accord McKinley v. Abbott, 643 F.3d 403, 406 (5th Cir. 2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself."); Harris v. Probation & Parole, Civ. Action No. 08-5182, 2009 WL 350685, at *4 (E.D. La. Feb. 9, 2009) (noting that because parole officers are employees of a department of the Louisiana state government, the Eleventh Amendment bars claims against in in their official capacities). As a result, this Court lacks subject-matter jurisdiction over any official-capacity claims against Soileau. Bryant v. Texas Department of Aging and Disability Services, 781 F.3d 764, 769 (5th Cir. 2015) ("When the Eleventh Amendment applies, [federal] courts lack subject-matter jurisdiction over the claim.").[7]

That said, the Court acknowledges that a limitation on the foregoing rule exists as a result of the landmark case of *Ex parte* Young, 209 U.S. 123 (1908): The Eleventh Amendment does **not** deprive a federal court of jurisdiction over an official-capacity claim seeking **prospective injunctive relief**. See, e.g., Green, 474 U.S. at 68. However, that limitation is of no moment here, because plaintiff does not seek prospective injunctive relief in this case.[8]

---

[7] However, in any event, Soileau also correctly notes that, even apart from his Eleventh Amendment immunity, any official-capacity claims against him additionally fail for another reason, namely that state officials sued in their official capacities simply do not qualify as "persons" under 42 U.S.C. § 1983. See, e.g., Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

[8] See Rec. Doc. 1, p. 9.

### B.  Individual-Capacity Claims

Soileau also seeks dismissal of the claims asserted against him in his individual capacity. Each of those claims will now be addressed in turn.

### 1.  Increase in Supervision Fees

Plaintiff's first claim is that the increase in his supervision fees (resulting from the order that he pay the costs of his extradition) violated his right to due process and constituted cruel and unusual punishment.[9]  However, Soileau argues that any claim against him concerning those supervision fees should be dismissed because parole officers, such as himself, do not set those fees.  That is correct; under Louisiana law, the supervision fees are determined by the Committee on Parole.  See La. Rev. Stat. Ann. § 15:574.4.2(A)(2)(e).[10]  Because "[p]ersonal involvement is an essential element of a civil rights cause of action," Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983), and because Soileau was not personally involved in setting the fees, no cognizable claim concerning the fees can be stated against him.

### 2.  Affidavit

Plaintiff's second claim is that his right to due process was violated by Soileau's failure to provide the notarized affidavit to the parole board.[11]  Soileau argues that parole officers, such as himself, enjoy absolute immunity with respect to such claims.[12]  He is correct.  See, e.g., Littles v. Board of Pardons and Paroles Division, 68 F.3d 122, 123 (5th Cir. 1995) ("Parole officers are

---

[9] Id. at p. 7.
[10] The Committee on Parole is part of the Louisiana Department of Public Safety and Corrections.  See La. Rev. Stat. Ann. § 36:409(C)(4).  The Committee on Parole replaced the Board of Parole, which was abolished.  See La. Rev. Stat. Ann. § 15:574.2(E); see also Gonzales v. State, 117 So. 3d 514, 515 n.1 (La. App. 1st Cir. 2013) ("Effective August 1, 2012, the Board of Pardons functioning as the committee on parole became the successor to, and assumed control of, the affairs of the Board of Parole.  See La. Acts 2012, No. 714, § 4.").
[11] Rec. Doc. 1, pp. 7-8.
[12] Rec. Doc. 10-1, p. 9.

entitled to absolute immunity from liability for their conduct in parole decisions and in the exercise of their decision-making powers."); see also Harris v. Probation & Parole, Civ. Action No. 08-5182, 2009 WL 350685, at *6 (E.D. La. Feb. 9, 2009) ("[S]tate parole officers and state parole board members, when sued in their roles in bringing charges or their roles in the revocation process itself, are entitled to absolute immunity from suit."); Curry v. St. Tammany Parish Sheriff's Department, Civ. Action No. 00-2462, 2006 WL 860997, at *4 (E.D. La. Mar. 31, 2006) ("[P]arole officers are entitled to absolute immunity from suit for their roles in granting, enforcing and revoking parole.").

### 3. Double Jeopardy

Plaintiff next claims that the prohibition against double jeopardy was violated when he was placed back in jail on the charges for which he had previously been released on parole.[13] That claim is premised on an underlying contention that the Double Jeopardy Clause applies to parole revocations. That premise is wrong as a matter of law. See, e.g., Parr v. Quarterman, 472 F.3d 245, 254 (5th Cir. 2006) ("[T]he double jeopardy clause does not extend to parole revocation proceedings."); Warren v. Myers, No. 2:20-cv-1277, 2021 WL 936320, at *2 (W.D. La. Jan. 26, 2021) ("[T]he law is clear in holding that double jeopardy protections do not apply to parole revocation proceedings."), adopted, 2021 WL 929876 (W.D. La. Mar. 10, 2021).

### D. Counsel

Lastly, plaintiff claims that Soileau's failure to follow proper procedures resulted in plaintiff being denied counsel in his parole revocation proceedings.[14] The premise underlying that

---

[13] Rec. Doc. 1, p. 8.
[14] Id.

claim is that plaintiff had a constitutional right to counsel in those proceedings. That premise is likewise flawed.

More than fifty years ago, in Morrisey v. Brewer, 408 U.S. 471 (1972), the United States Supreme Court concluded that the Due Process Clause of the Fourteenth Amendment guarantees a parolee an opportunity to be heard prior to the revocation of his parole. Specifically, the Supreme Court held that "[w]hat is needed is an **informal hearing** structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." Id. at 484 (emphasis added). The Court envisioned that structure would consist of "two important stages in the typical process of parole revocation": "The first stage occurs when the parolee is arrested and detained, usually at the direction of his parole officer. The second occurs when parole is formally revoked. Id. at 485.

The Court observed that the first stage "should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." Id. That determination "should be made by someone not directly involved in the case." Id. The Supreme Court observed:

> With respect to the preliminary hearing before this officer, the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

9

> The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position. Based on the information before him, the officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation. Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision.

Id. at 486-87.

The second stage would then be an actual parole revocation hearing, "if it is desired by the parolee, prior to the final decision on revocation by the parole authority." Id. at 487-88. At that hearing, "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Id. at 488. However, the Supreme Court left the details of such hearings to the states, setting forth only "the minimum requirements of due process" for such hearings. The Supreme Court held that those minimum requirements were:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489. But, of import here, the Supreme Court expressly declined to resolve "the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." Id.

The following year, the Supreme Court then specifically addressed the question of whether an indigent has the right to counsel in probation or parole revocation hearings in Gagnon v. Scarpelli, 411 U.S. 778 (1973).[15] In answering that question, the Supreme Court concluded:

> **We … find no justification for a new inflexible constitutional rule with respect to the requirement of counsel.** We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although **the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings**, there will remain certain cases in which fundamental fairness – the touchstone of due process – will require that the State provide at its expense counsel for indigent probationers or parolees.
>   It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be **capable of speaking effectively for himself**. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.

Id. at 790-91 (emphasis added).

Under those guidelines, plaintiff's case simply was not of the type for which fundamental fairness demanded appointment of counsel. He had no colorable claim of innocence on the sole

---

[15] Although Scarpelli concerned probation revocation hearings, the Supreme Court observed: "Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one." 411 U.S. at 782.

11

alleged violation of which he was convicted (being in arrears on his supervision fees); in fact, he pleaded guilty to that violation. As to the other alleged violations, those were not complex and they posed no great difficulty to plaintiff in "speaking effectively for himself" – as evidenced by the very fact that he **prevailed** and was found **not guilty** of those violations.

In summary: even if, as alleged, Soileau failed to follow proper procedures to allow plaintiff to request counsel, no constitutional violation occurred as a result of that failure because plaintiff had no constitutional right to counsel under the facts of this case.

## RECOMMENDATION

It is therefore **RECOMMENDED** that James Soileau's motion to dismiss, Rec. Doc. 10, be **GRANTED**.

It is **FURTHER RECOMMENDED** that plaintiff's official-capacity claims against Soileau be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

It is **FURTHER RECOMMENDED** that plaintiff's individual-capacity claims against Soileau be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[16]

New Orleans, Louisiana, this __22nd__ day of February, 2023.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[16] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.